Page 22-1064, John Lepper, Noel Lepper, et al. v. Ralph Zordino And I understand we have Mr. Moskovitz here for the appellant. Yes, good morning, Your Honor. And you would like to reserve three minutes for rebuttal, is that right? If I may, yes. Absolutely. So again, make yourself comfortable. And if you don't mind, maybe why don't you lift up the lectern just a tad and make sure you tilt the microphones towards yourself. How's that? You're not quite as loud as I would prefer. Well, I can speak louder. Okay, good. Feel free to project, everyone. Certainly. And why don't you just wait until your opposing counsel is settled. Just get everybody nice and comfortable before we start. Thank you. Okay. Good morning. I'm Joshua Moskovitz here for Appellant John Lepper. The only issue for this court to consider is whether or not the district court erred in granting summary judgment on Mr. Lepper's Class of 1 and Selective Enforcement Equal Protection claims. There are other issues addressed in the appellee's brief and that were addressed in the district court. If those issues have not been pursued on appeal, it is only the Equal Protection claims that Mr. Lepper now appeals. There are at least three reasons why the district court erred in granting summary judgment on Mr. Lepper's Equal Protection claims. The district court construed facts in favor of the appellees and resolved factual disputes in their favor. The most prominent is the question about requiring signed and sealed architectural plans or engineering plans for Mr. Lepper and not for any of the other comparator properties that we've put forward on appeal. Those three properties are 63 Wyandanch Avenue, 99 Park Avenue, and 250 Fire Island Avenue. The district court, and this is at page 36 of the special appendix, concluded that there was no evidence that any of those three properties violated the setback requirements of the village, and therefore it was rational to not require signed and sealed plans for those properties but to require that of Mr. Lepper's property. In fact, if you look at page 1758 of the appendix, you'll see a plan that's drawn up for 63 Wyandanch Avenue. We've highlighted this in our reply brief at page 5. You'll see that the plan that was submitted indicates a 14-foot distance between the structure and the rear fence line. For that zoning district, the setback requirement is 25 feet. So on its face, you can see that the comparator property of 63 Wyandanch Avenue also violated the setback requirement, and yet the village building inspector did not require signed and sealed architectural plans or engineering plans or even a sealed survey, and the town granted a permit for that property, which is inconsistent with its setback requirements. 99 Park Avenue and 250 Fire Island Avenue, although on their face indicate that they just comply with the setback requirement, that's only indicated by a hand-drawn notation, presumably of the property owner who submitted them, indicating that they were just at the setback requirement. Now, on its face, that would certainly give question, I think, to the village if indeed the setback requirement was so significant. One of the things that has troubled me about your argument, and I'm hoping you can give me some comfort, is it seems as if you are asking to be credited this information, and, like, you're suggesting that a jury wouldn't have to believe the information. Like, even just the way that you said it, they just did it. So I'm wondering what that would do to the summary judgment standard if even if construing the evidence that we don't have, you're basically coming up with some hypothetical way the jury could not believe it. How would we ever be able to decide anything via summary judgment? Well, I think in this case the court doesn't need to reach that issue if you look purely at 63 Wyandanche Avenue. Again, on its face, the plan that was submitted by that property owner that was approved by the town violated the setback requirement. No extra architectural plans were required. No variance was necessary. Mr. Lepper, by comparison, and hence his equal protection claim, wasn't even allowed to be considered for a variance because he hadn't submitted these architectural plans, which the village has pointed to no law, no regulation, no village building code that says architectural or engineering plans are required. No, but doesn't it say something, and I'm not looking for the language here, but something saying the information needed to comply, which in some cases might be architectural plans, but in some cases might not be. So isn't there built into their assessment the ability for experts to be able to make some judgment calls? It does, but it needs to be a rational distinction between the two. So for the architectural plans, the village has said if the planned building is too close to the property line, architectural plans are required. And when deposed, Inspector Fellman said the reason for architectural plans is to assess the safety of the building. It has nothing to do with the location of the building, right? And so for these other properties— Well, no, because the idea of a setback is how far away it can be from something that they can cause damage. I mean, it is a safety. It's maybe not a safety of the people who are in that building, but it's safety for other people, right? Well, perhaps in that sense, but again, for the three comparator properties, none of them— none of them did the village require architectural or engineering plans for. So we have at least one property, 63 Wyandanche, where on its face it's too close to the property line. It violates the town's setback requirements. So if the town's concern is— Where's the evidence about 63 Wyandanche that you say is on its face? 1758, or it's highlighted and shown on page 5 of our reply brief. And to be clear, you only raised this issue in your main brief. You do not address the argument. You do not address the court's finding that these properties were different. You only addressed that in your reply brief. Am I correct for the first time? No, Your Honor. I believe that in our opening brief, we noted all three of these properties, indicated that they were the comparator properties that were appropriate, that the district court erred in concluding that as a matter of law, they were incomparable. But this argument and these attachments that you— for the first time, you're arguing that they actually did require setbacks. You only raised that in your reply brief, as I see it. Where in your main brief did you raise this argument? If you give me just one moment, Your Honor. And I'm sorry, I didn't mean to interrupt my colleague, Judge Perez, so I— you can give me the citation later, but I didn't see you raise this issue in your main brief. But I may have missed it. So at page 27 of our opening brief, the second full paragraph, beginning with, Furthermore, we have citations to those precise pages of the joint appendix and indicate that the district court overlooked evidence that the inspector— building inspector Feldman and the village granted permits for these other tree houses. They didn't require signed and sealed architectural permits. But that's different from the setback requirement. It is the setback requirement argument, perhaps not spelled out as clearly as in the reply brief. So the point is— Well, I didn't get that argument. I understood the—I understand the concept of saying you're putting us through certain paces. You're requiring certain procedural steps on our part, for example, getting signed and sealed architectural plans. But that's different from saying what the content of those plans is to show that it was a setback or not. Because regardless of whether you have sealed architectural plans, it's a different thing to say, well, you also violated or didn't violate certain setback requirements, right? Well, I agree exactly with that, and that is our point. The village's explanation as to why the signed and sealed architectural plans were required of Mr. Lepper was because his tree house was too close to the property line. That was their explanation. We only required them of you because you're the only property that violated the setback requirement. But indeed, as perhaps not as in detail on page 27 of our opening brief as it is in our reply brief, I agree it was spelled out in more detail in our reply brief. That was the point, was that at least one of these other properties, and all three in some respects, appear on their face to have setback requirement issues. None of them were subject to the same requirement of signed and sealed architectural plans. Can I ask, did you have another question? No, no. Can I just ask you one question? Am I reading the record correctly that there's no dispute that the Lepper's tree house was the only one as to which a complaint was registered with Mr. Fellman? It's the only one that I'm aware that there's record evidence of that, yes. So why is that not dispositive in showing that the Lepper's tree house was not similarly situated in all relevant ways to those other ones as to which there's no complaint that was lodged? Well, I believe because the comparison has to be in all relevant and rational ways. The fact that one tree house is dangerous, another tree house isn't dangerous, but only one has a complaint about it, certainly doesn't prove it. If there's only one person who's complained about one tree house, I mean, certainly you're saying what's rational. It's not rational for a village or a municipality to take enforcement action with respect to the only complaint that they've ever received about something, that they're now required to go out and figure out who else in the world might have violated it that has not been—as to which there's no complaint filed? To be clear— I mean, the Lepper's could have filed a complaint as to these other folks or something. Anybody could have. Right. And then demonstrate, oh, well, wait a minute, you're aware of these other ones. To be clear, it's not the enforcement action that was taken by the village against the Lepper's. It's their treatment when they went to apply for a permit that were saying that these other properties are comparable to. Well, but all that followed the complaint, right? It did, but that's not a reason why those— Everything that followed. Everything they're complaining about followed the lodging of a complaint, right? For the Lepper tree house, yes. Right. So how do you then compare that, their treatment following a complaint, to other folks' tree houses as to which there was no complaint filed? Again, because our argument is that there was no rational difference between Mr. Lepper's tree house and these other tree houses when they considered their permit applications and granted those other permit applications. And I would point you to Fortress Bible Church, decided by this court, in which they considered the treatment of properties as comparators that happened years after the permit applications weren't granted by the plaintiff in that case. And so the point is, it's not that we're saying, you went out to the Lepper tree house and enforced the rules, maybe you didn't know about these others, although we say that's a disputed fact because of how obvious the other ones are. Our point isn't about that you went out and did this. The point is how you treated them when they came in to apply for their permit to legalize their property. For Mr. Lepper, he came in, and you said, we won't even consider it without these signed and sealed architectural plans, and by the way, here's our reason. That is the same as these other properties who they came in and applied for permits and got them. Were the Baldoffs asked to provide signed and sealed plans by a licensed architect or engineer? There is evidence in the record that the Baldoffs submitted those. Whether or not it was required, requested, or they did it on their own, I'm not so clear. Okay, so if they were, then where's the difference? We're not relying on the Baldoff property as a comparator. You walked away from that in a big way, which I thought was very revealing. So you have a combination of someone that was asked for signed and sealed, which when you started off, you were saying that was the big reason that you were treated differently. We have other people that were required to move their tree houses in order to comply with the setback requirement. We have people that didn't get complaints like you did. Help me understand what is it that was unique about the way in which you were treated when you have other people that are having to go through a bunch of different hoops, albeit for the reasons that you have, but yours are all of them, as opposed to this person has this one, this one has another one, this tree house has another one. You've got them all, so it would make sense to at least me that your client's experience would look a little different. So the way I would respond is to say, first of all, the Baldoff tree house was different in every respect from all of the potential comparators here. It was twice the size of any other tree house, including the leopards. It asked to have a height variance as well of, I think, well over 15 feet. And they went through that process of their own accord, as far as I can tell from the record, and that was several years before the leopards. They applied for a permit. It was initially not approved, like your client, right? They were told that they had to provide sealed and plans with architecture engineer, like your client, right? They were told that it violated the code, like your client, right? And they were forced to meet the setback requirement, like your client. Is that correct? As far as I understand, that's all correct. Okay, so then why is your client being treated differently? The question for us, as we presented it, and as I understand it, the class of one, is that Mr. Lepper has been singled out. And if you look at these other comparator properties, 63 Wyandanche and the others I mentioned, those properties were all allowed to be permitted, even though one on its face violated the setback requirement. None of them had architectural plans, 250. But did they go through the zoning appeals process? They weren't required to. They weren't even put to it. Who was the one who did? And I'm getting the names wrong. One of them did, right? Baldoff, which preceded the Lepper. Baldoff, yeah, that's what I'm talking about. Sorry, yes. So I guess I don't see, again, how you have to, you have to compare apples to apples, right? And if you've got somebody else, you say, well, you know, they were treated better. Well, but they went through a different process. Well, again, it's The client was not through that process. And that's precisely our claim, is the process that they were required to go through was different. The village only required the Leppers when you compare them to these other properties that we say are Well, the Leppers had to go through the appeals process. They would have lost if they had not gone through the appeals process, right? It was over and it was dead. The only way they got to move forward was to take the appeal, right? The Baldoffs? Yes. And move there. And they lost, that's right. And they lost their appeal, that's right. If they had stopped at the same point where your client stopped, they would have been in the same position in total violation of the town's or the village's laws, right? Well, in a sense, no. But they chose to move forward. And so the reason they got, I don't know, what do you want to call it, better treatment, they got to keep the treehouse, is because they took a different process. So, in other words, they're not comparators. I agree with you that the Baldoffs are not comparators and that's why we have not raised them as such. These other properties are comparators because they, just like the Leppers, submitted their applications. But I guess that's the point is if you have comparators who, in some respects, basically you have to show that you were singled out and treated unfavorably in a way that's totally different. You can't disregard other people who are sort of not comparators because they wound up doing another process that your client chose not to do. No, our argument is that it's not comparable for reasons that are substantive. The treehouse is twice the size. They asked for the height variance as well. There were additional aspects to the Baldoff treehouse that we don't have for the Leppers treehouse. But the three comparators that you do want to focus on, because I see, as Judge Pettis mentioned, you're walking away from the Baldoffs, is that there were no complaints about those three. Correct? My understanding is there were none, at least not in the record. But I don't think that's a rational difference between requiring signed and sealed architectural plans, not of those three, but only of Mr. Lepper. But there's one that you think violated the setback requirement, right, of those three? On its face. On its face of the application. Okay, so that is 63 Y in Vantage Avenue. So you agree that there's a material – would you concede at least that there's a material difference between 250 and 99 and those are not sufficient comparators because those don't violate the setback requirement? No, I don't agree with that. On the face of their applications, whoever submitted them wrote in its handwritten a number that coincidentally corresponded with precisely the setback requirement for those. There's no indication that the town went out and measured those to ensure that that was accurate before they granted the permits for those. So they didn't put them through any of the paces. And by the way – The question is whether they had to be put through the paces. Now you're asking – again, this I think goes to one of the questions Judge Pettit asked earlier. Are we now to speculate that maybe there was a setback problem with them? The point is that – No, just answer that question. Are we to speculate – are you asking us to speculate that there really was a setback problem? I'm saying – And that somehow the town neglected to figure out whether there was a setback problem? I'm saying on the record a jury could conclude that there was a setback problem with those properties. If you look at the pictures – What is the basis of that? If you look at the pictures of the treehouses, you can see that they are what appears to be exceptionally close to the property line, no different than the lepers. The point is when the town building department receives these applications, two of which – one on its face violates a setback requirement, no obligation for signed and sealed architectural plans, two of which the homeowners conveniently written the precise number of the setback requirement, and the village does nothing to ensure that's correct. Accurately, that's sort of a word that's just thrown in. Or possibly accurately. When you say conveniently, I mean, I suppose the truth is convenient. If someone had a complaint and others don't have a complaint, would you say, and conveniently nobody filed a complaint against them? I guess that's a word that seems sort of to add a rhetorical flourish without adding to the facts. Perhaps it does. I'll say for one of them, whoever wrote it in wrote 30 feet min. Again, that was the minimum requirement for the setback. So they were indicating to the building – That it complied with the building codes? According to their handwritten notes. And is that convenient? Is there anything else that they wrote on the plans that very conveniently was compliant with the building codes? Because then you're asking us to suggest that anything in the record indicating that someone was complying with the building codes is convenient, it seems to be sort of an air quotes, suggestive of something, and therefore that we ought not to believe it to be true? When there's no evidence to the contrary suggesting it's not? I don't think that's what I meant to imply. If I could be clear, what I believe is that for these three other properties, which were only dealt with in the course of this litigation, the town says we didn't know about any of those. We show that there's evidence that they were open and obvious, one of which is two houses down from one of the trustees, who's the one who made the complaint about the leper's house. That treehouse had been there and he had lived there for 60 years, and they say they knew nothing about any other treehouse other than the Baldoffs and the lepers. But even the one that you attach for the first time in your reply brief, even there you can't definitively say they're violating because you said only if that treehouse is above 15 feet because the setback is 14.3 according to this graph that you attach or this image. But you say the building violates the setback unless the building is under 15 feet. That's correct. So you don't even know if the treehouse is in violation in the one that you do attach for the first time in your reply brief. Is that correct? From looking only at that survey, that is correct. If you look at the photos that were part of the building department's permit application, it seems readily apparent that it's higher than 15 feet. But again, the point is these three properties, the village said, that's fine. Whatever you've submitted is fine. We'll grant your permit as it is. For Mr. Leper, for some reason, these requirements that are not found anywhere in the building code or otherwise are suddenly a requirement that prevents him from even having his permit denied for reasons that are never given, let alone sent to the zoning board for a possible variance consideration. So we've kept you up considerably past your time. We thank you for that. You've reserved three minutes for rebuttal. Why don't we hear from the attorney for the appellate, Mr. Tosca. Thank you, Your Honor. Good morning, Your Honors. May it please the court. Good morning, counsel. Just to address the three comparatives that counsel was talking about, those are comparatives, if you will, that came during litigation because they were disclosed, those addresses were disclosed in a discovery response regarding which tree houses or like kind comparables they were talking about. So when those addresses were disclosed, the building inspector, Steve Feldman, went out to look at them. In his affidavit, he sets forth that those did not violate setback requirements. In an affidavit, he set forth that those three comparatives were different, one, because they did not violate the setbacks and they didn't impose the kind of dangers that the leopard tree house poses to public property. So in terms of whether there is a rationale to the determination, we say that there is. Now, I would also add this. With regard to the setbacks, not only was that not something challenged in the main brief, it wasn't challenged in the court below. Mr. Feldman set forth in his affidavit that these did not violate the setback rules. If you will, if I can address just the reply brief and what counsel is talking about, number one, the tree house, the Sullivan tree house, that is six feet from the property line, which in that zone would comply. That particular tree house, if you will, Mr. Lepper, I mean the photographs are there, and he gave an affidavit, was there. If he wanted to challenge the setback, he could have taken a ruler and measured it. He did not. Nowhere does it say that the six-foot setback was violated in that particular tree house. With regard to ‑‑ I'm sorry. Maybe you're going there, so I apologize. But your colleague indicated that 63 Wynand Act violated the setback requirement as well. I read his argument to say that a jury could find that it was over 15 feet, but it didn't on its face beneath it. Can you just address that issue? Vehemently, Your Honor, yes. I mean, what we're talking about is speculation. How in heaven's name from a photograph can you tell whether that's more or less than 15 feet? To contradict the sworn affidavit of Mr. Feldman who was there and says the setback was complied with, that's number one. So he's saying, well, we can have a jury look at the photograph and see. And there are photographs that are taken from different angles, and there is no way to determine what the height of that is from those photographs. However, Mr. Feldman was there. He inspected. He first issued them permits based on their applications. On the face of the leper application, Your Honor, he puts down that his treehouse is about two feet away from the property line, and therefore it couldn't get a permit. He needed to sign sealed plans in order to go to the zoning board of appeals, just as the Baldoffs did. Now, if we could talk about the Baldoff treehouse for a moment. And I think what the plaintiff is saying here now is that, well, that's not comparable. That's different. That was the premise of their complaint. These three comparatives don't come until years later when the litigation happens and then they give us notice that these treehouses existed. So the only comparable that they depended upon to bring the complaint on the denial of equal protection in a class of one argument was the fact that we had a treehouse, the Baldoff treehouse. They cited in the complaint, but it did them no good. It disproves their case. The point is there, yes, the setback was violated, and not only did they comply by going forward with signed sealed plans, going to a hearing before the zoning board of appeals, they lost. They could not get the application. The village of Babylon has a strict policy on the setbacks, so they lost. How in heaven's name is that, you know, how is that not dispositive to the summary judgment motion? So can you also speak to a question I also asked your colleague about, is it your view that your colleague is trying to change the summary judgment standard by suggesting that, even though there's nothing specific to dispute it because hypothetically a jury could not credit, some information that that's a cause for summary judgment? Do you understand the summary judgment standard to be a bit altered under your colleague's view of the law? I do, Your Honor. The standard on summary judgment, summary judgment is the procedural equivalent of a trial. It's time to put up the evidence, and if you have something to oppose it, if you have evidence to contradict the prima facie showing of entitlement to summary judgment, it is at that point where you're obligated to come forward. And in fact, they did not come forward before the lower court. The lower court was correct in granting summary judgment because there is no issue of fact. There were no comparatives, and since they are here focusing solely on, and have only raised the class of one issue under the equal protection to prove denial, I'm sorry, to prove a denial of equal protection, I would submit that there was no evidence there. And the, if I may, the reply is kind of trying to now come up with something to say, wait a minute, though. There could, a reply, I'm sorry, a reply brief, no less, trying to say, well, yeah, there's something here because, look, if we look at the photographs, this may be taller than 15 feet, and therefore, it has to be 25 feet away. Well, how does that contradict Mr. Feldman's affidavit? It does not. And it wasn't raised in the lower court, and we don't believe it should be honored here. We do believe that Judge Azarak's decision should be sustained. If there's nothing further, I thank the court. No, thank you very much. Mr. Moskowitz, you have reserved three minutes for rebuttal, and as with everybody today, we'll try to hold it to three minutes because we kept you up for a long time on the front end. Thank you, Your Honor. I was going to say I think I've already used my rebuttal time in my opening argument, and I'll only address one point of Judge Perez, which is the summary judgment standard. No, we're not seeking to change the summary judgment standard on questions of intent, knowledge. Those are credibility questions where someone says, I didn't know something. There's no way to look in someone's mind and say you knew it. They didn't send an email saying, actually, I did know it. This is a case, for instance, where they say, we knew nothing about any other tree houses yet. One of those tree houses is visible to anyone walking down the street, and it's three houses down from the person who lived there for 60 years and says, I never knew about that tree house. That's a credibility issue that the jury could conclude against them. The issue is relevant is not really whether or not they knew it, but whether or not they knew they were unpermitted. I mean, that's the issue. And I think that, especially in the way that you're arguing a selective enforcement or a class of one, it's not whether they saw that there was one. It was whether or not they knew that it was unpermitted. And I'm not seeing the evidence suggesting that there's a dispute on that. And I don't disagree with the question focused on whether or not it was permitted or not. There's no way to know from looking at a tree house whether it had a permit. But Trustee DeVita, who's the one who lives two houses down, that was his whole job, right? He had, and he said he gets phone calls from the code enforcement folks. That was his job at the village was to kind of know what was going on. In any event, the question here is not, we're not saying selectively enforced in the sense that they went out to Mr. Leper's tree house where there was this complaint and they sort of, oh, found out about these others. We're saying that when Mr. Leper said, OK, you know, I'm trying to get my permit and came to the town and submitted his application. He was treated differently than the other tree houses that followed the three that we've already mentioned in our opening argument. Thank you. Thank you very much to both of you. We will take the case under advisement. Thank you.